**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| FRANC KREZE, | CASE NO. 1:17-cv-01254 |
| Plaintiff, | JUDGE DAN AARON POLSTER |
| v. | MAGISTRATE JUDGE DAVID A. RUIZ |
| NANCY A. BERRYHILL, *Acting Comm'r of Soc. Sec.*, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Franc Kreze (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

## I. Procedural History

On July 22, 2014, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of February 5, 2014. (Transcript ("Tr.") 271-279). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 133-216). Plaintiff participated in the hearing on April 26, 2014, was represented by counsel, and testified. (Tr. 98-132). A vocational expert ("VE") also participated and testified. *Id*. On May 16, 2016, the ALJ found Plaintiff not disabled. (Tr. 93). On May 16, 2017, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On June 15, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 12).

Plaintiff asserts the following assignment of error: the residual functional capacity ("RFC") determination does not accurately account for his mental limitations. (R. 11).

## II. Evidence

### A. Relevant Medical Evidence[1]

**1. Treatment Records**

On February 13, 2015, Plaintiff was seen by Kelly Wadeson, Ph.D., for a neuro-psychological evaluation. (Tr. 1651-1653). She noted that Plaintiff had a brain aneurysm on

---

[1] The recitation of the evidence is not intended to be exhaustive and focuses primarily on Plaintiff's mental health treatment, as Plaintiff's lone assignment of error alleges the omission of mental-based functional limitations. The court includes only those portions of the record cited by the parties in their briefs *and* deemed relevant by the court to the assignment of error raised. The omission of any portion of Plaintiff's treatment for physical impairments should not be construed as a minimization of such impairments. Nor should such omission be considered a finding that Plaintiff's mental impairments are wholly unrelated or are not exacerbated by physical condition(s).

2

February 5, 2014. (Tr. 1652). Dr. Wadeson discontinued the examination after 2.5 hours noting as follows:

> Based on objective testing, the patient's performance was below recommended cutoffs on stand alone and embedded measures of response bias. This suggests unreliable effort on cognitive measures. *** Due to unreliable effort during the current evaluation, the obtained low cognitive test scores cannot be validly interpreted. As such, the vast majority of his test performance across measures of basic attention, processing speed, memory, and fine motor dexterity are unable to be interpreted. In contrast, his performance on measures of single word reading and cognitive set-shifting suggest at least low average to average range skills.

(Tr. 1651).

On April 17, 2015, Plaintiff was seen by psychologist Taylor Rush, Ph.D., as part of an interdisciplinary program for headache treatment (Tr. 1680-1683). Dr. Rush approved the psychotherapy recommendation (Tr. 1680). She diagnosed generalized anxiety disorder and depressive disorder. *Id*. She observed that, "Mr. Kreze's sister appears to foster a moderately enabling dynamic with her brother," and also that "Mr. Kreze's family appear moderately enabling of pain related disability." (Tr. 1680-1681).

On July 22, 2015, Plaintiff was seen by psychiatrist, Syed Rizvi, M.D., for complaints of anxiety. (Tr. 1691). Plaintiff reported developing "severe, persistent headaches refractory to treatment," increased depression and anxiety, social withdrawal, and crying spells. (Tr. 1691). Dr. Rizvi assessed a primary diagnosis of mood disorder, post-traumatic stress disorder (PTSD), and a provisional diagnosis of generalized anxiety disorder.[2] (Tr. 1695).

On July 24, 2015, Dr. Rush noted that Plaintiff was "beginning to make plans for his life" after his discharge from the Interdisciplinary Method for the Assessment and Treatment of

---

[2] Dr. Rizvi's notes state that "[a]ll Information is from Patient report except when noted. This evaluation Is NOT intended for forensic, disability or child custody purposes." (Tr. 1691) (emphasis in original).

3

Chronic Headache (IMATCH), "resuming his normal custody schedule with his children," "doing projects around the house, and will be making phone calls to associates about possible job openings that he could consider." (Tr. 1971). She raised the idea of psychotherapy, but he wanted "to see if he is able to self-manage his anxiety and depression symptoms over the next few weeks first." *Id*.

On November 3, 2015, Plaintiff reported to Steven Krause, Ph.D., that he had difficulty returning to work as a painter, and had difficulties with increased anxiety and headaches after working for three hours. (Tr. 1709).

On December 24, 2015, Dr. Rizvi found Plaintiff had clear and distinct speech; intact associations; logical, coherent, and rational thought process; no evidence of disturbance in thought perception or progression; and, an appropriate and adequate fund of knowledge. (Tr. 1731). On mental status examination, Plaintiff was oriented x 4, had intact memory (recent, remote, as well as immediate), normal concentration, somewhat dysphoric mood, full and appropriate affect, and no suicidal/homicidal ideation. (Tr. 1731). Dr. Rizvi increased Plaintiff's prescription for Effexor, discussed the importance of psychiatric follow-up, and considered adding psychotherapy depending on patient's response to medication and patient's motivation. (Tr. 1732).

On January 22, 2016, Dr. Rizvi talked to Plaintiff over the phone and Plaintiff reported he was "doing better on Effexor, with better mood." (Tr. 1768).

On February 12, 2016, Plaintiff was seen by Dr. Krause, who noted that Plaintiff realized "he can return to work, albeit in a modified fashion" and he "reported significantly improved mood throughout the session." (Tr. 1737).

4

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On September 4, 2014, Plaintiff was seen by Richard Halas, M.A., at the request of the state agency for a psychological report. (Tr. 1512). Plaintiff denied having a psychiatric history, and does not see a psychologist or psychiatrist. (Tr. 1513). On mental status examination, Plaintiff had a depressed mood and flat affect; his speech pattern was slow and did not exhibit any specific problems with fragmentation of thought, poverty of speech, perseveration of response or flight of idea; had high levels of anxiety but denied panic/anxiety attacks; his overall presentation was within normal limits; his memory for past events was limited; and, his insight and judgment were good. (Tr. 1515). Mr. Halas diagnosed depressive disorder, anxiety disorder, and cognitive disorder. (Tr. 1517). He assigned a Global Assessment of Functioning ("GAF") score of 45.[3] *Id*. Mr. Halas opined that Plaintiff "is able to understand information, assimilate knowledge and problem solve;" has severe problems in the area of maintaining attention and concentration, and maintaining persistence and pace to perform simple or multi-step tasks; has significant problems responding appropriately to supervision and to coworkers in a work setting; and, due to issues with memory, has significant problems responding appropriately to work pressures in a work setting." (Tr. 1517). Mr. Halas stated that Plaintiff would not be able to remember job

---

3 The GAF scale reports a clinician's assessment of an individual's overall level of functioning at a particular moment. An individual's GAF is rated between 0-100, with lower numbers indicative of more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) (DSM-IV). Notably, an update of the DSM in 2013 eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

responsibilities, procedures, or safety precautions. (Tr. 1518).

On September 30, 2014, state agency psychologist Joseph Edwards, Ph.D., reviewed Plaintiff's records and found evidence of an organic mental disorder, an affective disorder, and an anxiety related disorder. (Tr. 154). He found that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and, no episodes of decompensation. (Tr. 154). In the category of understanding and memory, Dr. Edwards opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, but could "complete one or two step instructions." (Tr. 158). In the category of sustained concentration and persistence, Plaintiff was found to have no significant limitations, except that he was moderately impaired in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 159). As a result, Dr. Edwards opined that Plaintiff "[c]an work in settings with occasional flexibility for shifts and breaks [and can] sustain concentration for brief episodes of focus." *Id*. Due to adaptation limitations, Dr. Edwards opined that Plaintiff "[c]an work in settings in which major changes are easily explained and graduated." *Id*.

On January 10, 2015, state agency psychologist Deryck Richardson, Ph.D., reviewed the records on file and largely agreed with Dr. Edwards's prior opinions, except that he believed Plaintiff had moderate rather than mild difficulties in maintaining social functioning. (Tr. 154, 183). Although Dr. Richardson found that Plaintiff had greater abilities in understanding and memory by finding he could complete two to three step instructions, Dr. Richardson agreed with Dr. Edwards that Plaintiff could work in settings with occasional flexibility for shifts and breaks, and could sustain concentration for brief episodes of focus. (Tr. 188).

6

**B. Relevant Hearing Testimony**[4]

At the April 26, 2106 hearing, Plaintiff testified as follows:

- He 5'6" tall and weighs 230 pounds. (Tr. 103).

- He has a driver's license, but does limited driving. (Tr. 104).

- He has not worked on a regular basis since February of 2014. (Tr. 108).

- He has been prescribed Effexor for headaches and anxiety. (Tr. 109).

- He had been diagnosed with PTSD. (Tr. 111).

- His mental health limitations, aside from anxiety, include problems with memory. (Tr. 113-114).

- He has not been around crowds for two years, and tends to avoid people. (Tr. 115).

The VE characterized Plaintiff's past jobs as follows: security guard, Dictionary of Occupational Titles ("DOT") 372.667-034, light exertional with an SVP of 2; painter, DOT 840.381-010, medium exertional with an SVP of 7; grinder machine tender, DOT 603.685-062, medium exertional with an SVP of 3; and, office manager, DOT 169.167-034, sedentary with an SVP of 7. (Tr. 125). The ALJ posed the following hypothetical question to the VE:

> I'm going to ask you to assume an individual who is 46, soon to be 47, has a 12th grade education, can read and write and perform simple arithmetic, as [INAUDIBLE] on to which you testified. This individual is limited to work of light exertion requirements, that is additional not exertional limitations specifically. No climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. No concentrated exposure to temperature extremes, humidity, environmental pollutants, or vibration. No exposure to hazards, specifically, heights, machinery, commercial driving. And mental limitation, can perform routine tasks in a low stress environment, specifically no fast paced, strict quota, or frequent work changes. Avoid superficial, interpersonal interactions. Specifically no arbitration,

---

[4] Again, the court's summary of the hearing testimony is not intended to be exhaustive and focuses primarily on Plaintiff's testimony relating to mental-based limitations and on the VE's testimony.

7

    negotiation, or confrontation.

(Tr. 125-126).

The VE testified that such an individual could not perform any of Plaintiff's past relevant work. (Tr. 126). However, the VE identified the following as representative examples of jobs that such an individual could perform: cashier, DOT 211.462-010 (1,100,000 jobs nationally, 40,000 in Ohio); mail clerk, DOT 209.687-026 (50,000 jobs nationally, 2,000 in Ohio); and, routing clerk, DOT 222.687-022 (70,000 jobs nationally, 3,000 in Ohio). (Tr. 127). The VE stated that her testimony was consistent with the DOT. *Id.*

The ALJ posed a second hypothetical question asking the VE to assume an individual with the same characteristics described above, except that such an individual would be off task at least 20 percent of the time. (Tr. 127). The VE testified that there would not be any jobs in the national economy in significant numbers for such an individual. (Tr. 128).

Utilizing the language employed by the state agency psychologists, Plaintiff's counsel inquired regarding the employability of "an individual who needs occasional flexibility for shifts and breaks." (Tr. 129). The VE testified that "[i]f it's up to one third of the day where he would need to be having flexibility on his own terms, then he would not be employable." (Tr. 130).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a)

8

and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since February 5, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

9

3. The claimant has the following severe impairments: cerebral aneurysm with subarachnoid hemorrhage, status post coil embolization; pain disorder associated with psychological and physical factors; headaches; obstructive sleep apnea; depressive disorder; anxiety disorder; and mild cognitive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: he can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; cannot have concentrated exposure to temperature extremes, humidity, environmental pollutants, or vibration; cannot have any exposure to hazards such as heights, machinery, or commercial driving; and is limited mentally to performing routine work tasks in a low stress environment (no fast pace, strict production quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation, or confrontation) (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 25, 1969 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security

   Act, from February 5, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 81-92).

**V. Law and Analysis**

**A. Standard of Review**

  Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

  The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

  In the sole assignment of error, Plaintiff asserts that the ALJ erred in omitting limitations from the RFC assessment that, according to the decision, he ostensibly credited. (R. 11, PageID#

2123-2125). Specifically, Plaintiff argues that the ALJ purported to ascribe "significant weight" to the opinions of the non-examining state agency psychological consultants, Dr. Edwards and Dr. Richardson, but that the RFC omits the need for "occasional flexibility for shifts and breaks" and that Plaintiff could "sustain concentration for brief periods of focus." *Id*.

A claimant's RFC is "the most [he or she] can still do despite [his or her] limitations. [The Commissioner] will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545(a)(1).[5] The ALJ bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The concomitant hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those

---

[5] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *accord Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)), *adopted by* 2011 WL 441518 (Feb. 4, 2011).

In the case at bar, the ALJ addressed their opinions as follows:

> The undersigned additionally gives **significant weight** to the opinions of Joseph Edwards, Ph.D. and Deryck Richardson, Ph.D., the State agency psychological consultants. Both doctors stated that the claimant could perform simple work, in settings with "**occasional flexibility for shifts and break**s," that he could "sustain concentration for brief periods of focus," and could tolerate major work changes if they were "easily explained and graduated." Dr. Richardson further stated that the claimant could have no more than superficial contact with others. (Exhibit 1A, p. 11-12; Exhibit 2A, p. 11-13; Exhibit 5A, p. 9-11; Exhibit 6A, p. 9-11). **These opinions are again generally consistent with the record as a whole**, the claimant's admissions that his medications and therapy were effective in alleviating his symptoms, and also the fact that the claimant did not seek out any kind of specialist mental health treatment until April 2015, almost a year after his alleged disability onset date; this last point suggests strongly that the claimant symptoms prior to April 2015 were apparently not severe enough to warrant regular treatment from a mental health professional. **The doctors' restrictions**, with the specific interpersonal restriction offered by Dr. Richardson, **are adopted as the residual functional capacity** generally as a restriction to simple, low stress work with only superficial interpersonal requirements.

(Tr. 90) (emphasis added).

A review of the RFC reveals that the ALJ did not include the need for "occasional flexibility for shifts and breaks." (Tr. 84-85). As set forth above in the recitation of the hearing testimony, Plaintiff's counsel employed nearly identical language in questioning the VE, who replied that if occasional means "up to one third of the day where he would need to be having flexibility on his own terms, then he would not be employable." (Tr. 130). Thus, the ALJ's

13

decision to adopt or omit such a limitation may be dispositive.

The Commissioner responds that arguments similar to those from Plaintiff have been rejected by the Sixth Circuit. (R. 12, PageID# 2135). In *Reeves v. Commissioner of Social Security*, the Sixth Circuit stated that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." 618 Fed. App'x 267, 275 (6th Cir. 2015) (*citing Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-00260, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014)). The *Reeves* court rejected the plaintiff's argument that "the ALJ erred by failing to incorporate any balancing, avoidance of hazards, avoidance of vibration, and left arm feeling limitations into the RFC assessment," because only one of the two state agency physicians described such limitations, which "lack[ed] substantial support elsewhere in the record." *Id.* The Sixth Circuit held that although the ALJ gave great weight to the source in question, "he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record." *Id.*

The court finds *Reeves* distinguishable. First, the court declines to find that such a limitation, which in this case was found by *both* doctors, is unsupported by substantial evidence. The substantial-evidence standard is similar to a sufficiency standard that is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *accord Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). In fact, the substantial evidence standard is such that it is possible for substantial evidence to support opposite conclusions. *See, e.g., Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (stating that

a decision can be supported by substantial evidence even if there is other substantial evidence in the record that could support an opposite conclusion.) (citations omitted). Given the significant mental impairments described in the record, this court cannot find that the disputed limitation assessed by Drs. Edwards and Richardson is so devoid of support as to be untenable. Moreover, after explicitly setting forth several of the physicians' opinions, including a quotation of the disputed opinion concerning the need for occasional flexibility for shifts and breaks, the ALJ opined that these opinions were generally consistent with the record as a whole. (Tr. 90). The court will not second guess this determination by inappropriately reweighing the evidence.

Second, as the *Reeves* decision does not quote or paraphrase the material portions of the ALJ's decision, it is unclear whether the limitations raised by the plaintiff therein were ever specifically addressed in the ALJ's decision. In the case at bar, the disputed limitation was quoted verbatim by the ALJ, and, as far as this court can discern, the ALJ intended to adopt the restrictions cited and incorporate them into the RFC. (Tr. 90).

In giving her response, it is clear that Plaintiff's counsel and the VE construed the word "occasional" as a term of art, rather than ascribing a layperson's definition. (Tr. 129-130). Specifically, the VE's testimony was based on the assumption that occasional meant up to one-third of the workday. (Tr. 130). This definition appears to stem from Social Security Ruling ("SSR") 83-10, which indicates that "'[o]ccasionally' means occurring from very little up to one-third of the time." 1983 WL 31251 at *5 (Jan. 1, 1983); *see also Schulte v. Colvin*, No. 4:13-CV-01521, 2014 WL 1654129, at *5 (N.D. Ohio Apr. 24, 2014) ("The term 'occasionally' in the social security context generally is defined as occurring very little to no more than one-third of the time") (White, M.J.); *Handy v. Comm'r of Soc. Sec.*, No. 2:14-CV-1371, 2015 WL 6164112, at *1 (S.D. Ohio Oct. 21, 2015) ("According to the DOT, occasionally means occurring from

15

very little up to one-third of the time.") (internal quotation marks omitted). Had the disputed opinion been offered by a medical source outside of the state agency, the court would be highly skeptical whether the term "occasional" could reasonably be construed so precisely. However, the disputed opinion did come from state agency psychologists who are "highly qualified physicians and psychologists," who are considered "experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). Moreover, pursuant to SSR 96-8p, "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

While the court does *not* find that the ALJ was necessarily obligated to construe the state agency consultants' use of the term "occasional" in this context as meaning up to one third of the workday, the ALJ's failure to reconcile his purported adoption of the opinions of Drs. Edwards and Richardson and the VE's testimony that such an individual was unemployable leaves a gaping inconsistency that deprives this court of the ability to conduct a meaningful review. "When an ALJ fails to mention relevant evidence in his or her decision, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *McHugh v. Astrue*, No. 1:10-CV-734, 2011 WL 6130824, at *5 (S.D. Ohio Nov. 15, 2011) (*citing Morris v. Sec'y of Health & Human Servs.*, Case No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr.18, 1988)).

Therefore, the court finds Plaintiff's assignment of error well taken, and recommends that the ALJ be instructed to issue a new decision that reconciles this apparent inconsistency.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be

REVERSED and REMANDED for proceedings consistent with this opinion.

                                        s/ *David A. Ruiz*
                                        David A. Ruiz
                                        United States Magistrate Judge

Date: June 7, 2018

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**